# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

CHARLES GODSPOWER #513858,    )
    )
    Plaintiff,    )
    )    NO. 3:23-cv-00399
v.    )
    )    JUDGE CAMPBELL
CORECIVIC, et al.,    )
    )
    Defendants.    )

## MEMORANDUM AND ORDER

In April 2023, Plaintiff Charles Godspower was allegedly transferred from Trousdale Turner Correctional Center (TTCC) in this judicial district to Whiteville Correctional Facility (WCFA) in the Western District of Tennessee. Plaintiff filed a pro se "medical emergency motion," dated April 17, alleging that he had been denied access to allergy-compliant food since arriving at WCFA on April 12. (Doc. No. 1). The Court ordered Plaintiff to file an Amended Complaint and resolve the filing fee. (Doc. Nos. 3, 7). Plaintiff then paid the filing fee (Doc. No. 15), filed three Motions to Amend (Doc. Nos. 9, 10, 12), and filed two other motions. (Doc. Nos. 8, 13). This case is before the Court for initial review, as required by the Prison Litigation Reform Act. And as explained below, Plaintiff fails to state a claim against six of the seven Defendants, including all Defendants that make venue technically proper in this judicial district. Those six Defendants will be **DISMISSED**, and this case will be **TRANSFERRED** to the Western District. The Court expresses no opinion on the substance of Plaintiff's Section 1983 claim(s) against the only remaining Defendant, WCFA unit manager "Jane Doe 1."

# I. PENDING MOTIONS

## A. Establishing the Operative Complaint (Doc. Nos. 9, 10, 12, 13)

Plaintiff filed two Motions to Amend the Complaint (Doc. No. 9, 10) before filing a third, more complete Motion to Amend the Complaint. (Doc. No. 12). The third Motion to Amend (Doc. No. 12) is **GRANTED** and the two prior Motions to Amend (Doc. Nos. 9, 10) are **DENIED** as moot. The Clerk is **DIRECTED** to docket the Amended Complaint attached to the third Motion to Amend (Doc. No. 12-1) as an Amended Complaint. This Amended Complaint (Doc. No. 12-1), as incorporated with the attached Motion to Amend (Doc. No. 12) and supplement (Doc. No. 12-2), is now the operative complaint in this case.

Plaintiff's "Motion to Include New Evidence" (Doc. No. 13) is **DENIED**, and the Court does not consider it as a supplement to the operative pleading in this case. Federal lawsuits are not litigated by filing isolated motions to enter evidence into the record. Defendants are only required to answer a plaintiff's "pleading," in the form of a complaint or amended complaint, which must set forth a plaintiff's entire statement of the claim against the defendants. *See* Fed. R. Civ. P. 3 (civil action commenced by filing complaint); Fed. R. Civ. P. 7(a) (limiting the types of permissible pleadings); Fed. R. Civ. P. 8(a) (requirements for a pleading that states a claim for relief); Fed. R. Civ. P. 8(b) (requirements for responding to a pleading).

## B. Motion Regarding Consent to the Magistrate Judge and Jury Demand (Doc. No. 8)

Plaintiff filed a Motion stating that he does not consent for a Magistrate Judge to "review" his case and instead seeks a "federal judge to review case with a jury demand." (Doc. No. 8). This motion is both unnecessary and improper. It is improper because Magistrate Judges *are* federal judges. And it is unnecessary because, although a Magistrate Judge may conduct any and all proceedings in a case pursuant to 28 U.S.C. § 636(c) if all parties consent to it, the proper way for

2

a party to withhold consent is to simply not sign the consent form. (*See* Doc. No. 2). No separate motion is required to note the withholding of consent. Likewise, it is unnecessary for Plaintiff to file a separate motion making a jury demand, as he included the phrase "JURY TRIAL DEMANDED" in the caption of the Amended Complaint that is now the operative complaint in this case. (Doc. No. 12-1 at 1; *see also* Doc. No. 12 at 10 (requesting jury trial in Motion to Amend incorporated into Amended Complaint); Doc. No. 12-2 at 1 (including the phrase "JURY DEMAND TRIAL" in supplement incorporated into Amended Complaint)).

Accordingly, as a technical matter, this Motion (Doc. No. 8) is **DENIED** as moot. But as a practical matter, because the parties have not signed and filed a Notice of Consent form in this case, a Magistrate Judge has not been authorized any and all proceedings pursuant to 28 U.S.C. § 636(c).[1] And pursuant to Plaintiff's demand in the Amended Complaint, any claims in this case that reach the point of trial will be heard by a jury.

## II. INITIAL REVIEW

The Court must review the Amended Complaint and dismiss any part that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see also* 42 U.S.C. § 1997e(c). The Court must also hold this pro se pleading to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### A. Allegations

This case concerns the food and medical care provided to Plaintiff at TTCC (his prior place of confinement) and WCFA (his current places of confinement). The Amended Complaint names

---

[1] The parties' consent is not required, however, for the Court to refer a case to the Magistrate Judge pursuant to 28 U.S.C. § 636(b).

seven Defendants: "CoreCivic, L.L.C."[2]; Trinity Food Services; TTCC; WCFA; the "Medical Department" at WCFA; Vincent Vantell, the Warden of TTCC; and "Jane Doe 1," a unit manager at WCFA. (Doc. No. 12-1 at 1–2; Doc. No. 12-2 at 1–2). The Amended Complaint incorporates the allegations in the Motion to Amend (Doc. No. 12) as well as the "medical emergency motion" that initiated this case. (Doc. No. 12-1 at 5; Doc. No. 12-2 at 6–11). Liberally construing these filings in Plaintiff's favor, he alleges as follows.

   1. Plaintiff's Dietary Restrictions and Medications

Plaintiff has been diagnosed by a doctor with food allergies.[3] (Doc. No. 12-2 at 6). He submitted a report from an allergy blood test ordered by a medical provider at TTCC and conducted on October 6, 2022. (*Id.* at 5). The Court takes judicial notice that allergy blood tests are one tool used to diagnose food allergies, but the test cannot "confirm a food allergy," it cannot "tell you how serious an allergy may be," and it "may not always be accurate."[4] Plaintiff's report, moreover, includes the statement that "[t]his test, and any food specific allergen IgG result, should not be used for the diagnosis of allergic or atopic disease states (except for sensitivity to milk in neonates and gluten sensitivity)." (*Id.*). With these disclaimers in mind, as best as the Court can tell, this report reflects that Plaintiff's allergen results were "out of range" for the following foods, listed in

---

[2]    The Court takes judicial notice that CoreCivic is a private entity contracted to manage TTCC and WCFA. *See* https://www.tn.gov/correction/state-prisons/state-prison-list/trousdale-turner-correctional-center.html; https://www.tn.gov/correction/state-prisons/state-prison-list/whiteville-correctional-facility.html (last visited Oct. 3, 2023).

[3]    Plaintiff makes an isolated allegation that he is also a "vegan by religion" who does not "eat meat or any type [of] animal products." (Doc. No. 12-2 at 8).

[4]    *See* Allergy Blood Test, MedlinePlus, https://medlineplus.gov/lab-tests/allergy-blood-test/; Food Allergy Testing, MedlinePlus, https://medlineplus.gov/lab-tests/food-allergy-testing/ (last visited Oct. 3, 2023).

order from most to least likely allergy: peanut, soybean, wheat, casein (a protein found in cow's milk),[5] corn, yeast, and tomato. (*Id.*).

Plaintiff has also been prescribed allergy medication, "mental health pills," and blood pressure medication. (*Id.* at 8; Doc. No. 12 at 7–8).

2. Treatment at TTCC

Medical providers at TTCC advised Plaintiff "not to eat any of the food listed" on the allergy report "to avoid allergic reactions which could be deadly/dangerous to [his] health." (Doc. No. 12-2 at 6–7). Plaintiff received special allergy meals at TTCC, apparently without incident. (*Id.* at 8). Plaintiff also kept his allergy medication and blood pressure medication on his person at TTCC apparently without incident, which is consistent with his prescription for those medications. (Doc. No. 12 at 8).

3. Treatment at WCFA

On April 12, 2023, Plaintiff was transferred to WCFA, and as of April 17, Plaintiff had been "denied access to food" since his arrival. (Doc. No. 12-1 at 5; Doc. No. 12-2 at 7). During those five days, Plaintiff was "completely ignored, not fed, [and] denied access to medical."[6] (Doc. No. 12-2 at 8). Plaintiff pleaded with WCFA staff members to provide him allergy-compliant food, and on April 14, Defendant Jane Doe 1 (a WCFA unit manager) told Plaintiff that, due to an email from TTCC, Plaintiff would be given "alternate allergy meals until someone from higher up approves [Plaintiff's] allergy meals." (*Id.* at 7; Doc. No. 12 at 5). The lack of food led to Plaintiff losing a "significant amount of weight," having ill-fitting clothes, and experiencing

---

[5]     *See* Milk Allergy, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/milk-allergy/symptoms-causes/syc-20375101 (last visited Oct. 3, 2023).

[6]     Despite these allegations, it would not be reasonable to infer that Plaintiff alleges a *complete* denial of food at WCFA during that time, as Plaintiff separately alleges that he was eating *some* food in the form of "noodles" that do not have any nutritional value. (Doc. No. 12-2 at 8).

5

lightheadedness, loss of vision, sleeplessness, headaches, fatigue, trouble standing, and anxiety. (Doc. No. 12-2 at 7–9). Plaintiff's empty stomach also gave him "problem[s]" taking his medication. (*Id.* at 8). Defendants continue to disregard Plaintiff's need for allergy-compliant "specialty meals[s]." (Doc. No. 12 at 2). Specifically, Trinity Food Services and CoreCivic have not provided Plaintiff with his "medical[l]y ordered diet food trays." (*Id.* at 5).

As for Plaintiff's medication, he continually asked about his allergy medication and blood pressure medication when he arrived at WCFA on April 12, 2023, and WCFA staff stated they did not have it. (*Id.* at 8). Plaintiff did not receive these medications until May 14, 2023. (*Id.*). During the time period in which Plaintiff did not have access to these medications, he experienced dizziness, heart flutters, anxiety, fainting, loss of appetite, cold sweats, and headaches. (*Id.*).

## B. Legal Standard

To conduct the required initial review, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470– 71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).

## C. Analysis

Plaintiff brings this case under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA).[7] (Doc. No. 12-1 at 1; Doc. No. 12-2 at 1). Section 1983 permits individuals to bring civil claims based on violations of "the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). And while Titles I and III

---

[7]    Plaintiff also references 42 U.S.C. § 2000 (Doc. No. 12-1 at 1; Doc. No. 12-2 at 1), but that statute does not exist.

6

of the ADA have no bearing in the context of incarceration,[8] an inmate can sometimes assert potentially viable claims under Title II. *See Stansell v. Grafton Corr. Inst.*, No. 18-4009, 2019 WL 5305499, at *1 (6th Cir. Aug. 16, 2019).

### 1. Dismissing Six of the Seven Defendants

As explained below, Plaintiff fails to state a Section 1983 claim against six of the seven Defendants, and he also fails to state an ADA claim against all seven Defendants.

### A. Section 1983

As the Court explained to Plaintiff at the outset of this case (*see* Doc. No. 3 at 4–5), TTCC and WCFA are both buildings, which are not legal entities subject to suit under Section 1983. *See McIntosh v. Camp Brighton*, No. 14-CV-11327, 2014 WL 1584173, at *2 (E.D. Mich. Apr. 21, 2014) (collecting cases establishing that a prison facility "is not a 'person' or legal entity subject to suit under 42 U.S.C. § 1983"). Likewise, the "Medical Department" at WCFA is not a proper Defendant to a Section 1983 case because a prison's "medical department[]" is not a "person[] under § 1983." *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 356 (6th Cir. 2006) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989)).

The Court also explained to Plaintiff (Doc. No. 3 at 4–5) that private entities like CoreCivic and Trinity Food Services may be liable for a constitutional deprivation under Section 1983 only if the deprivation was directly caused by a policy or custom of that particular private entity. *See Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012). And here, Plaintiff does not provide allegations from which the Court can reasonably infer that CoreCivic or Trinity Food Service had

---

[8]     Title I "applies only to employment in the workplace," and Title III covers discrimination in places of "public accommodation"—a statutorily defined term that does not include jails or prisons. *See Ogbeiwi v. CoreCivic Am.*, No. 1:20-cv-01094, 2021 WL 2144326, at *6 (W.D. Tenn. May 26, 2021) (citations omitted).

7

a policy or custom that caused Plaintiff's asserted constitutional deprivations. Plaintiff, therefore, fails to state a Section 1983 claim against these two Defendants.

The same conclusion applies to Plaintiff's official-capacity claims against the individual Defendants. (*See* Doc. No. 12-2 at 2 (stating that all Defendants are being sued in their individual and official capacities)). "An official-capacity claim against a person is essentially a claim against the" entity that the person represents. *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013)). Here, the individual Defendants are allegedly employed by CoreCivic. (Doc. No. 12-1 at 3; Doc. No. 12-2 at 1–2). So, for the same reasons that Plaintiff fails to state a Section 1983 claim against CoreCivic, Plaintiff fails to state an official-capacity claim under Section 1983.

Finally, and again as the Court explained to Plaintiff in its initial Memorandum and Order (Doc. No. 3 at 5), a plaintiff cannot state a Section 1983 claim against a defendant by "[m]erely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint." *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155–57 (1978)). And that is just what Plaintiff has continued to do with regard to TTCC Warden Vincent Vantell. Accordingly, Plaintiff fails to state a Section 1983 claim against Vantell.

B. ADA

The term "public entity" in Title II of the ADA "includes state prisons." *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing Penn. *Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)). But this term does *not* include private corporations—even those contracted with the State to manage prisons. *Vick v. Core Civic*, 329 F. Supp. 3d 426, 441–42 (M.D. Tenn. 2018) (collecting cases). This Court and the Western District of Tennessee have both relied on this proposition of

8

law to dismiss Title II ADA claims brought against CoreCivic. *See Dodson v. CoreCivic*, No. 3:17-cv-00048, 2018 WL 4800836, at *7 (M.D. Tenn. Oct. 3, 2018) (Campbell, J.) (declining to "depart from the majority view" on this subject "unless and until the Sixth Circuit holds otherwise"); *Ogbeiwi*, 2021 WL 2144326, at *6.

Here, all seven Defendants are either a private corporation (CoreCivic and Trinity Food Services), a building managed by a private corporation (TTCC and WCFA), or employees of a private corporation (TTCC warden Vincent Vanteel, WCFA unit manager "Jane Doe 1," and the "Medical Department" as WCFA). So Plaintiff fails to state a claim under Title II of the ADA as a matter of law.

### 2. Transferring Case to Western District of Tennessee

What remains, following this analysis, is Plaintiff's Section 1983 claim(s) against WCFA unit manager "Jane Doe 1." The proper venue (or at least the more convenient venue for the parties and witnesses) for consideration of this claim(s) is the Western District of Tennessee.

Under 28 U.S.C. § 1391(b), a civil action may be brought in a judicial district where: (1) any defendant resides, if all defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the case occurred; or (3) any defendant is subject to personal jurisdiction at the time the case is commenced, if there is no district in which the case may otherwise be brought. Venue is no longer proper here under subsections (b)(1) and (b)(2) because WCFA unit manager "Jane Doe 1" allegedly resides in the vicinity of WCFA (*see* Doc. No. 12-2 at 1–2) and the events giving rise to Plaintiff's claim(s) against "Jane Doe 1" occurred at WCFA. WCFA is in Hardeman County,[9] and Hardeman County is located within the Western District of Tennessee. 28

---

[9]   *See* https://www.tn.gov/correction/state-prisons/state-prison-list/whiteville-correctional-facility.html (last visited Oct. 3, 2023).

U.S.C. § 123(c)(1). And because this case could have been brought in the Western District, subsection (b)(3) does not apply.

When a case is in an improper venue, the Court may transfer it "to any district or division in which it could have been brought" if it is "in the interest of justice" to do so. 28 U.S.C. § 1406(a); *see also* 28 U.S.C. § 1404(a). Accordingly, the Clerk will be directed to transfer this case to the Western District. *See Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 738 (6th Cir. 2003) ("Congress has enacted a number of statutes that give federal courts the power to transfer cases sua sponte.")

### III. CONCLUSION

For these reasons, all claims except for Plaintiff's Section 1983 claim(s) against WCFA unit manager "Jane Doe 1" are **DISMISSED**, and the Clerk is directed to **TRANSFER** this case to the United States District Court for the Western District of Tennessee, Eastern Division. 28 U.S.C. § 123(c)(1). This Court expresses no opinion on the substance of the remaining claim(s).

Plaintiff **MUST** send all future filings in this case to the Western District of Tennessee.

It is so **ORDERED**.

_____

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

10